THOMAS F. DALEY, Judge.
The plaintiff, Joseph Wong Choy, filed suit against the Parish of Jefferson, Circle Inc., N-Y Associates, Inc., and Bayou Land and Marine, Inc. alleging that work performed by these defendants on the Suburban canal caused damage to plaintiffs property, which is located adjacent to the canal. Following a trial, the trial court found in favor of the defendants dismissing *1120 plaintiffs claims. For the reasons that follow, we affirm.
FACTS:
In 1995, the Parish of Jefferson contracted with N-Y Associates, (N-Y) an engineering firm, to design improvements to the Suburban canal. The Parish contracted with Circle, Inc., (Circle) a general contractor, to install concrete bulkheads along the sides and bottom of the canal. Bayou Land and Marine (Bayou) was hired to install and remove sheet piling as part of the construction process. This project began in August 1995 and was completed in September 1996.
|4Mr. Choy filed suit against the Parish, N-Y, Circle, and Bayou alleging that the construction on the canal was performed improperly in that the water was removed from the canal prior to sheet piles being driven to stabilize the ground and that the area between the cement wall in the canal was improperly backfilled allowing the ground between his property and the canal to remain unstable causing increased subsidence on his property resulting in holes around the building through which the pilings could be seen. He claims this led to the building sinking and shifting horizontally towards the canal.
Mr. Choy testified that he purchased a four-plex located at 4200 Eporia Street in Metairie in July 1992. Prior to purchasing the property the lender required that he make certain repairs to the property involving the roof and balconies, as well as the walls and ceiling in two of the apartments. Plaintiff was also required to have a plumber check a leak in apartment three and certify that all plumbing met code standards. An addendum to the appraisal report states that the property is nine to ten feet from “a large drainage canal which is separated from the property by a wooden fence.” The report goes on to state: “There could possibly be some subsidence caused by water flow in the future.”
Plaintiff acknowledged being aware of problems with subsidence and explained that he “checked with the parish” and understood there would be future repairs to the canal. Plaintiff testified that in February 1995, a civil engineer, Glenn Snyder, inspected the property at his request because plaintiff felt the driveway and sidewalks were “sinking more.” Plaintiff testified that he was not advised by Mr. Snyder of any damage to the building at that time. In October 1995, Wallace Treadway, a building inspector, inspected the property and found the front corner of Apartment Four was lower that the rest of the building.
Lin conjunction with plaintiffs testimony, numerous copies of photographs were introduced into evidence. Plaintiff testified that these photographs depicted his property prior to, during, and after construction. Numerous cracks to the driveway and sidewalks on plaintiffs property, as well as cracks in the bricks and slab were visible in these photographs. While plaintiff acknowledged that cracks in the driveway and sidewalk were present prior to construction, he testified that the cracks got larger and stoops on the apartment had migrated towards the canal during and after construction. Plaintiff testified that there were no cracks in the brick prior to construction. Plaintiff testified that since the construction on the canal, water seeps up through the slab in Apartment One. He denied that this occurred prior to construction. Throughout plaintiffs testimony, he explained what was depicted in the numerous photographs. However, when questioned as to the dates the photographs were taken, plaintiff could not provide specific answers. Plaintiff testified that these photographs were taken between March 1996 and October 1996, *1121 with the exception of a small number that were taken just prior to trial. Plaintiff was unable to provide any documentation regarding the dates these photographs were taken.
With regard to certain photographs that depicted construction 'in the area behind plaintiffs property, plaintiff testified that the photographs showed that the water in the canal was removed prior to the sheet piles being driven. Plaintiff testified that other photographs showed that the area between the concrete bulkhead and his property was backfilled without removing a concrete sidewalk from behind the property. Plaintiff explained that the construction on the canal caused an increase in the subsidence resulting in the pilings under the building to be visible.
| fiPlaintiff claimed that the damage caused to the apartments by the construction resulted in difficulty renting the apartments. However, on cross-examination, plaintiff admitted that family members lived in two of the apartments and did not pay rent, and that the probable reason for the lack of a tenant in Apartment Four was due to water damage unrelated to the construction. Plaintiff did not submit any documentation with regard to loss of rental income.
During plaintiffs testimony, a video was played that depicted the property on October 11, 1995, prior to construction being done adjacent to plaintiffs property. This video shows numerous cracks in the driveway, sidewalks, and stoops on plaintiffs property, as well as several areas of damage to walls and ceilings. The video shows a missing shingle and damage to the overhang of the property. Cracks in the corners of the slab foundation can also be seen.
Lance Creel testified that he was hired to perform the pre-construction inspection and videotape for this project. He viewed photographs submitted during plaintiffs testimony and. testified that these conditions of subsidence and cracking were not in his video. He explained that this meant he did not see these conditions.
Glynn Snyder was accepted by the court as an expert in civil engineering. Mr. Snyder testified that he examined the exterior of plaintiffs property three times. In 1992, Mr. Snyder inspected the property after sewer work was performed. He found the building to be sound with the parking lot and sidewalks in good condition with “normal cracking.” When he inspected the building in February 1995, he noted more subsidence and more cracks in the driveway. He did not recommend 'any repairs at that time. Mr. Snyder testified that when he returned to inspect the property after .1995, subsidence of the ground beneath the house was visible. Mr. Snyder opined that even if construction was not performed, he would have expected subsidence to continue to erode the ground beneath the building and |7the sidewalks. Mr. Snyder explained that this subsidence was caused by normal fluctuations in the water table and the fact that the canal filled and drained following rain. Mr. Snyder denied taking any photographs or measurements during any of these inspections.
Ron Calcagno testified that he was employed by N-Y as the resident inspector on the Suburban Canal project. He explained that it was his job to make sure the contractor constructed the project according to the plans and specifications set forth by N-Y. Mr. Calcagno testified that he was on the jobsite everyday and filled out daily progress reports. Mr. Calcagno testified that sheet piles were driven into the ground prior to the cement walls being constructed. When the sheet piles were being driven, there was a technician monitoring the vibrations and geotechnical re *1122 ports were generated from these vibrations. He noted that there were several dates when the vibrations were recorded as excessive. These occurred when the vibration hammer was started and when sheet piles were dropped. On the other times the vibrations were noted as high due to the pile driving, the pile driving was stopped so that any high readings were never sustained. Mr. Calcagno noted that in over fifty to sixty hours of pile driving there were only nine times that readings were excessive. Mr. Calcagno concluded that Circle complied with the plans and specifications on this project.
Minor Hines testified that he was the project manager for Circle. In this position, he hired subcontractors, scheduled equipments, bought materials and attended meetings related to the project. Mr. Hines explained that he was at the jobsite 80-85% of the time. Mr. Hines testified that in carrying out this project, the work was done from a moveable bridge that was constructed over the canal and moved along as the project progressed. The work was constructed in sixty foot sections and was done the same way throughout the project. The sheet pile was |sdriven first to stabilize the banks while the excavation was done. After the excavation of the canal bottom and sides, concrete walls were poured to create a flume. The area between the sheet pile and the concrete wall was backfilled, then the sheet pile is removed. The entire area was then cleaned up and graded. Mr. Hines explained that the usual procedure was to remove the water from the canal after the sheet piles were driven. Mr. Hines was unable to state the dates the sheet piles were driven and removed or the date the backfill was done.
Mr. Hines testified that the concrete walkway behind plaintiffs property was not on the plans for this project. Mr. Hines stated that the plans were drawn in December 1994 and the sidewalk may have been added after that date. Mr. Hines did not know the exact date that the concrete sidewalk was removed, but explained that it had to be removed because if would have been in the way of the final grade line when the project was completed.
Mr. Hines testified that instruments called piezometers were used to measure the water tables in the areas of construction. Mr. Hines testified that based on the piezometer readings the water table adjacent to plaintiffs property was not lowered during this project.
Sam Scandaliato was accepted by the court as an expert in civil engineering. He testified that he inspected plaintiffs property in September 1996 and again in February 1997. Mr. Scandaliato testified that at the 1996 inspection pilings under the house were visible and there were a lot of cracks in the driveway and sidewalks. The cracks and subsidence increased between the first inspection and the second inspection. Mr. Scandaliato testified that measurements were taken of the water table levels at the first visit and were relied upon for the second inspection.
|flMr. Scandaliato viewed photographs taken by plaintiff purportedly showing that the sheet piles were being driven after the canal adjacent to plaintiffs property had been drained. Mr. Scandaliato testified that the sheet piles should have been driven prior to removing the water from the canal because when the water is removed from the canal, the water under plaintiffs house went to the canal and took the soil with it. This caused the remaining soil to sink. He further testified that there was a photograph that showed backfill having been done with the concrete walkway behind plaintiffs property still in place. Mr. Scandaliato testified that the house had settled four inches over a sixty foot span *1123 and shifted three inches towards the canal. He opined that this was caused by the removal of the water from the canal prior to driving the sheet piles and improper back filling. On cross-examination, Mr. Scandaliato acknowledged that he did not take measurements or pictures during either of his inspections of plaintiffs property-
He further testified that he reviewed the plans and specifications after this deposition and this led to the criticisms that N-Y failed to give Circle construction sequence for the contractor to follow, although he acknowledged that the contractor did not have to follow this sequence. Mr. Scandal-iato further criticized N-Y for failing to give adequate instructions to the pre-con-struction inspector. Mr. Scandaliato had no evidence that Bayou did not follow plans and/or specifications.
Wallace Treadway was called to the stand by Circle and was qualified as an expert in the field of building inspection. He inspected plaintiffs property at the request of plaintiff on October 20, 1995 to determine if settlement in the foundation had occurred. Mr. Treadway testified that he took elevations of the corners of the building in relation to the height of the water reservoir. He concluded that there was a two and one half inch drop in thirty feet from the | inhighest to the lowest point in the foundation. He did not advise plaintiff to do repairs on the building at that time.
Mr. Hines was recalled to the stand during the defendants’ case. Mr. Hines explained that the specifications called for existing bulkheads between the concrete bulkhead and the plaintiffs property to be cut down two feet below grade and that this was done. In support of his position that the concrete sidewalk behind plaintiffs property was removed prior to back-filling, he produced daily reports from April 10, 1996 stating that concrete was excavated from the east and west sides of the canal at Eporia Street.
Mr. Hines explained that when possible the sheet piles were driven prior to removing water from the canal, but on some occasions there was too much debris in the canal. When that occurred, the canal would be drained and the debris removed so the sheet pile could be driven. Mr. Hines explained that the purpose of the backfill is to keep the embankment from moving down and to stabilize the bank. After the concrete wall is poured, the area is backfilled and the sheet pile is removed.
■ Mr. Hines testified that backfilling was not done on top of the concrete walkway behind plaintiffs property because grass could not have been planted over this walkway. He further testified that even if they had backfilled over the walkway this would not have had any bearing on subsidence on plaintiffs property because they had backfilled from the canal bank all the way up to the existing property level and this would have stabilized any movement on the bank.
Ron Calcagno was also called back to the stand for the defendants’ case. Mr. Calcagno testified that he spoke to plaintiff on two occasions regarding his complaints about the construction causing damage to his property. Mr. Calcagno testified that these complaints were reviewed then submitted to N-Y and Don Hull, | nwho represented the Parish. A report dated July 3, 1996 was admitted into evidence and lists seven items of damage plaintiff claims were caused by the construction. Mr. Cal-cagno testified that he inspected plaintiffs property in order to verify these damages. He then informed plaintiff to put his complaints in writing so there would be no misrepresentations. A follow up letter from Mr. Calcagno to plaintiff was admitted into evidence supporting Mr. Caleag- *1124 no’s testimony that plaintiff was later reminded to put his complaints in writing. Mr. Calcagno testified that he never received anything in writing from plaintiff.
Mr. Calcagno testified that when he inspected plaintiffs property, he noted there were no gutters on the property. He noted the holes at the edge of the slab of the building and he opined that the lack of gutters caused the water from rain to wash away the soil from the edge of the building.
Jerry Householder was qualified by the court as an expert in civil engineering and construction management. He testified that he reviewed the plans and specifications, geotechnical reports, dewatering plan, Mr. Scandaliato’s report, depositions, and photographs in this case. He opined that the water table was not lowered during the construction of this project based on the piezometer readings. He explained that it made no difference whether the water in the canal was removed prior to driving the sheet pile because the permeability of the soil would not have allowed the water to flow fast enough from under the house to cause the subsidence. Mr. Householder testified that it made no difference whether there was a gap between the sheet piles and the concrete walkway behind plaintiffs property because there was stability up to the sidewalk and any movement of the ground would have been further down. He further testified that he had been to the site three or four times and the sidewalk had been removed.
| 1?.Mr. Householder explained that if the holes under plaintiffs house were caused by movement of the soil beneath the ground, you would expect to see holes other than right next to the house. He concluded that these holes were more than likely not caused by erosion.
Mr. Householder testified that the two and a half inch settlement in plaintiffs house was not excessive and it did not need to be raised. He denied that the house had moved horizontally towards the canal.
Mr. Householder testified that N-Y’s actions in the design and construction administration of this project did not fall below the standard of care for engineers practicing in Louisiana. He further testified that he saw no causal connection between the erosion under plaintiffs house and other damage complained of and the construction on the canal.
The deposition of Donald Hull was admitted into evidence. Mr. Hull was retained by the Parish as the program manager for the Suburban canal progress. His job was to manage the design and construction of the project. He reviewed the plans and specifications submitted by N-Y and made sure that they were approved by the appropriate Parish departments. Mr. Hull testified that he visited plaintiffs property in response to plaintiffs complaints regarding damage to his property as a result of the construction. Mr. Hull testified that the property was not maintained very well.
Mr. Hull testified that the sheet piles were driven before the water was removed from the canal. He further testified that if a gap existed between the sheet pile and the earthen side of the canal, it had to be filled in so that it would not hold water.
At the conclusion of trial, the trial court took the matter under advisement. The court then rendered judgment in favor of the defendants, dismissing plaintiffs | ^claims, finding “plaintiff failed to prove by a preponderance of the evidence that the damage was caused by any of the defendants.”
LAW AND DISCUSSION:
On appeal, the plaintiff contends the trial court committed manifest error in *1125 finding no-liability on the part of the defendants. With regard to the Parish, plaintiff contends that there are two legal theories that demand recovery for him. First he argues that the Parish is the owner of the canal and under Civil Code article 667, while a landowner may do whatever he wishes with his property, he is liable for any damage to- his neighbor’s property that is caused by his conduct. Plaintiff argues that the Parish had knowledge that construction work on the canal could cause damage to adjacent properties because the contract between the Parish and Circle contains a hold harmless agreement and provides that Circle will be responsible for damages caused to adjacent properties. Plaintiff argues that since the Parish had exclusive control over the canal, it had the ability to prevent the damage to plaintiffs property.
Plaintiff contends that the project manager for .the Parish, Donald Hull, testified that the sheet piles had to be driven before the water was removed from the canal. Minor Hines agreed with this testimony, yet plaintiff claims he introduced photographs showing that the sheet piles were driven after the water was removed from the canal. Plaintiff further argues that Mr. Hull testified that backfilling between the sheet piles and the earthen side of the canal was done to prevent subsidence during construction. Mr. Hines testified that the backfill was done to keep the embankment from moving down and to stabilize the bank. Ron Calcagno testified that the backfill be done between the sheet piling and the earthen side of the canal to fill any void that might exist between the two. |14 Plaintiff argues that photographs were introduced to show that there was a gap between the existing sheet pile and the earthen side of the canal adjacent to plaintiffs property.
Second, plaintiff argues that the doctrine of res ipsa loquitur provides relief for his claims. Plaintiff contends that the pre-construction videotape and photographs indicate the area surrounding the building was not experiencing subsidence. Plaintiff argues that Lance Creel, who was retained to conduct a pre-construction videotape, testified that had the damage depicted in plaintiffs photographs been present at the time of his inspection, he would have videotaped and documented them. Mr. Hines also testified that they would have expected Mr. Creel to videotape and document all damage to plaintiffs property at the time of the inspection. Plaintiff concludes that the only reasonable explanation for the damage to his property is the negligence of the defendants.
Plaintiff further argues that the trial court committed manifest error in finding no liability on the part of the remaining defendants, Circle, N-Y, and Bayou. Plaintiff contends that the evidence shows that Circle failed to- construct the project according to the plans and specifications provided by N-Y. In support of plaintiffs position, plaintiff relies on the testimony of Mr. Hines and Mr. Hull who testified that the plans and specifications called for the sheet piles to be driven prior to removal of water from the canal yet plaintiffs pictures show that this was. not followed. Plaintiff further points to the testimony of Mr. Hines, Mr. Hull, and Mr. Calcagno to argue that the plans and specifications required the area between the sheet piles and the earthen wall of the canal to be backfilled to prevent subsidence; however, plaintiff claims his photographs demonstrate this was not done. Plaintiff contends Mr. Hines project reports show that a gap was left between the sidewalk, behind his property and the sheet pile for several months.
*1126 | ^Plaintiff argues that N-Y failed to monitor the construction process to assure that the contractor followed the plans and specifications. Plaintiff concludes that the failure to drive the sheet pile prior to removing water from the canal and the failure to properly backfill the area between the sheet pile and the earthen side of the canal combined with the vibrations associated with the work resulted in massive subsidence and a lateral shifting of plaintiffs property toward the canal.
It is well settled that a court of appeal may not set aside a trial court’s or a jury’s finding of fact in the absence of “manifest error” or unless it is “clearly wrong.” Rosell v. ESCO, 549 So.2d 840, 844 (La.1989). When there is a conflict in the testimony, reasonable inferences of fact should not be disturbed upon review, even though the appellate court may feel that its own evaluations and inferences are as reasonable. Id. On appellate review, the issue to be decided is not whether the trier of fact was right or wrong, but whether the factfinder’s conclusion was reasonable. Lasyone v. Kan. City S. R.R., 00-2628 (La.4/3/01), 786 So.2d 682. Where there are two permissible views of the evidence, the factfinder’s choice between them cannot be manifestly erroneous or clearly wrong. Rosell, supra.
Given the appellate standard of review, we see no manifest error in the trial court’s finding that plaintiff failed to prove that any damage to his property was caused by the negligence of the defendants. Plaintiffs arguments ignore the testimony of defendants’ expert, Jerry Householder, who testified there was no causal connection between the construction on the canal and the damage to plaintiffs property. Mr. Householder explained that it made no difference whether the water in the canal was removed prior to driving the sheet piles because the permeability of the soil would not have allowed the water under the building to flow fast enough to the canal to cause this subsidence. With regard to the timing of |1fithe removal of the concrete sidewalk behind plaintiffs property, Mr. Householder testified that it was irrelevant whether or not they backfilled over the sidewalk because the movement in the ground that would have caused subsidence under plaintiffs building would have been further down in the ground. Mr. Householder further explained that if the holes under plaintiffs house were caused by migration of the soil beneath the ground, you would expect there to be holes in other areas, rather than just next to the house.
Additionally, plaintiff acknowledged there were cracks in the driveway and flatwork prior to the construction. He further acknowledged that there was subsidence prior to the construction and that he was aware that because his property was located next to a canal, there was increased subsidence. Further, although plaintiffs experts, Mr. Snyder and Mr. Scandaliato, had visited the property and testified as to the damage thereto, neither took any measurements to document the increased size of the cracks or any photographs to document the existence of the damage. Thus, we find sufficient evidence in the record to support the trial court’s finding.
For the foregoing reasons, the judgment of the trial court is affirmed.

AFFIRMED.